GIBBS (FALES v.). See Case No. 4,621.

GIBBS (FIELD v.). See Case No. 4,766.

———

## Case No. 5,384.
### GIBBS v. JOHNSON.
[3 App. Com'r Pat. 255.]

Circuit Court, District of Columbia. Jan. 6, 1860.

PATENTS—PRIORITY OF INVENTION—EVIDENCE OF —RES GESTAE—ADMISSIONS—EQUIVALENTS—ANTICIPATION.

[1. The declarations and conversations of a person made at the time of exhibiting and explaining his invention are a part of the res gestae, and admissible to prove priority of invention.]

[2. Admissions made by a person in an offer of compromise, voluntarily made without any pending negotiation, and without stating it to be without prejudice, are admissible against him.]

[3. Johnson's invention of a machine chain stitch is substantially identical with Gibbs' invention of machine sewing, and, being prior in time, letters patent are properly awarded to him.]

[4. Gibbs' invention of an automatic or self feeder for sewing machines is not an equivalent of the hand feeder of Johnson.]

Appeal [by James E. A. Gibbs] from the decision of the commissioner of patents, refusing to grant him letters patent for his improvement in sewing machines.

The appellant states his claim thus: "What I claim as my invention and desire to secure by letters patent is: 1st. The sewing by machinery of cloth or other fabric by interlacing a binding thread with the loops of the tambour or chain stitch. 2nd. In combination with an eye pointed needle and suitable feeding mechanism, I claim a discoidal shuttle or thread case, provided with two hooks, both taking separate and successive loops from the needle, when the said parts are arranged in

relation to each other, so as to operate substantially as described, whereby either of the three stitches, herein set forth, may be made, by simply changing the direction of the feed, or omitting the insertion of the secondary thread at pleasure. 3rd. I claim changing the direction of feed by reversing the action of the spring which produces the retracting motion of the feeder." This application was received and filed August 12, 1858, before which time, to wit, on June 15, 1858, the said A. F. Johnson having filed the following application, the first in these words: "What I claim as my invention and desire to secure by letters patent is a rotary hook constructed as described or in any manner equivalent thereto in combination with a needle and a bobbin for the purpose of forming a seam by the interlacing of two threads as set forth. 2nd. I claim the shoulder b, or its equivalent, for the purpose of preventing the point from being entangled with the old loop as set forth. 3rd. I claim passing that portion of the loop that lies in the groove w, or around the periphery of the hook during the first portion of its revolution behind the bobbin as set forth." The claim as set forth in the other application is in these words: "What I claim as my invention and desire to secure by letters patent is the stitch herein described, consisting of a chain stitch, having a binding thread passed through its loops for the purpose described." The said application of Gibbs was put in interference with the said two applications of said Johnson, and on May 6, 1859, the interference was decided on the evidence before the office, when priority of invention was decided and awarded to said Johnson.

In the report of the examiner adopted as the decision of the commissioner, it is stated, that in the application of Johnson, which covered the sewing machine, the claim involved the combination of a needle, rotary hook and bobbin, for the purpose of forming a seam by the interlocking of two threads, as set forth. The second application of Johnson claimed the stitch made by his machine, namely, a chain stitch having a binding thread passed through the loops. With respect to Gibbs' application he says: "James E. A. Gibbs made an application for a patent for improvements in sewing machines on a machine that produced the same stitch as the machine of Johnson, and substantially the same mechanism was employed by him to effect it. He claimed interlacing a binding thread with the loops of the tambour or chain stitch" and the combination of a feeding mechanism, a discoidal shuttle, a thread case and needle by which three different stitches could be made. Of the stitch he says: "Like the well known sewing machine lock stitch, it is composed of two threads, but so far as the office is advised the binding thread thrown into the chain stitch has not before been known or used, and as this stitch possesses advantages over the common double thread stitch for some descriptions of sewing, it was

deemed to involve patentable invention." A former interference is alluded to, in which the invention involved embraced only the machine, but (the commissioner says) "some effort was made on the part of Gibbs in that case to show that Johnson was endeavoring by his experiments on what was called 'Exhibit B,' to make 'a fast stitch' and some of the witnesses in speaking of that exhibit said a bobbin was put into the cavity of the rotary hook to make 'a fast stitch' and this machine was made in November, 1856. Gibbs did not in that interference make any attempt to prove that he invented the double thread locked chain stitch now in question; and therefore so far as the stitch is concerned this is all that need be said about that first interference."

The report next takes a view of the testimony of Stephens, from which it is supposed to appear that in June, 1854, Johnson told him of his having invented a stitch by interweaving a binding thread with a chain stitch, and spoke of getting a patent for a hook that would do the work; also that Johnson about that time showed him a bobbin and a hook with a hole or opening in the center to receive the bobbin, saying this was to carry a bobbin thread through the loop of a chain stitch. This witness further thinks the hook and bobbin then shown him by Johnson is quite correctly represented by Exhibits Ab and Bc. The report continues: "It is manifest that if Ab were rotated so that the hook would catch the loop of a needle thread, whilst Bc was in a depression in the center and carried a thread with one end projecting beyond the hook, the stitch produced would, by a mechanical necessity, be a chain stitch with a binding thread in each loop; that the invention of the stitch in question was from this testimony complete in 1854; and the invention at this date was Johnson's." The same witness testifies to other attempts of Johnson to make a double thread fast stitch with a machine like Exhibit O in October or November, 1856. The report further states, that Exhibit O is not presented as a mature invention, nor is it very clear that as shown in the drawings it would make the stitch in question when a shuttle were used as the vehicle of the binding thread. This remark, however, is limited to the automatic operation of this exhibit. This witness refers to the Exhibit B, and says that he saw it in the rooms of Emory, Houghton & Co., in the early part of December, 1856, and in the following August or September he saw a perfectly operating machine at Johnson's shop, making the chain stitch with an interlaced binding thread. The report then proceeds to state the testimony of Johnson and wife. Those two witnesses have been objected to as incompetent. The report further states that Johnson's father-in-law saw something like Exhibits Ab and Bc, several times in the latter part of 1853 or first part of 1854. I. H. Crane made Exhibit B of former interference in the fall

of 1856, and understood Johnson that the bobbin Exhibit S was to carry a thread, a locking thread, to keep the chain stitch from pulling out. Other witnesses prove the existence of Exhibit O sometime between the month of May and November, 1856.

The evidence on the part of Gibbs is then considered in the report, which proceeds:

"The earliest date of the invention of the stitch in question by Gibbs is fixed by the testimony of John H. Ruckman who says that Gibbs described this stitch to him about the last of February, 1856,—stitch like Exhibit J. Joel Polson thinks Gibbs showed him about a stitch like Exhibit J, in April, 1856, the chain stitch with a thread running through each loop. From the testimony here referred to, it appears that the stitch involved in the interference was invented by Johnson in 1854, was described and shown to others by him and made by him in the presence of others in the early part of that year, and I am therefore of opinion that he is entitled to a patent therefor as the first and original inventor.

"As before remarked, Johnson's machine involved the combination of a needle, rotary hook and bobbin. He also claimed minor features not strictly involved in this interference; his needle vibrated in the arc of a circle; his rotary hook had a continuous motion, and carried the bobbin within it, and in operation the rotary hook takes a loop from the needle, thread passes round and takes a second loop from the needle, releasing at the same time the first loop in which the bobbin had left its thread, and the needle retracting draws this first loop around the second, and around the bobbin thread, thus forming the double thread lockchain stitch. Gibbs' machine, with but slight modifications, produced the same result, by the same combination of mechanism organized under an equivalent arrangement to that of Johnson, and this combination is distinctly covered by Gibbs' claim. Gibbs has also minor claims, &c. Conceiving from the testimony that the device shown in Exhibit Bc, and Ab, was made by Johnson in 1854, it is certainly proper to regard the invention it covered as the inception of the invention in question. From all the testimony offered by Johnson it appears that he had steadily in view the making of a fast stitch automatically without relinquishing the tambour or chain stitch. In the progress of his experiments, he tried various means for effecting this purpose without having produced a perfect machine, and in the latter part of the year 1856 he brings out Exhibit B of the former interference, and while yet incomplete he explains and shows this machine to Gibbs. Exhibit B forms an important link in connecting the invention of 1854, as shown in Exhibits Ab and Bc with the machine in the application on which this interference is founded with the machine operating perfectly, seen by Stephens at 332 Washington street, Boston, where Johnson had his shop on the last of August or first of September, 1857; and also with the machine of Gibbs as shown in Exhibit K as shown in his caveat of April 25, 1857; and with the machine in this application. The invention of Johnson as now presented was not complete in 1856, but the combination of a needle, rotary hook and bobbin is clearly shown in Exhibits Ab and Bc, and this combination constitutes the leading invention in question here and clearly presented in the invention of both applicants. The invention of Gibbs as shown in Exhibit L, and seen by Wallace in May or June, 1857, and the caveat of April 25, 1857, both show imperfect machines, and the Exhibit K seen in August or September, 1856, by Ruckman & Polson, and described by them, are but sketches, and all exhibit the leading features of the invention shown in Exhibits Ab and Bc, or rather all these imperfect and immature representations of invention show but the same device as Johnson's invention of January, 1854, so far as any of them involve the combination in question, namely, the needle, rotary hook and bobbin. Besides this, in their efforts to compromise, both Gibbs and his counsel went too far in their acknowledgements to Johnson of his priority of invention on the double thread machine, now wholly to recall their admissions. Even for the sake of peace and a quiet title or possession without molestation, Gibbs was not required to make the direct admission that Johnson was the first to make the stitch with a rotary hook, as he was understood to by Cushman, for such admission is a virtual surrender of all claim to originality of invention on the part of Gibbs.

"For these reasons I am of opinion that A. F. Johnson was the first and original inventor of the stitch he claims in his application No. 2, and of the combination of the needle, rotary hook and bobbin claimed in his application No. 1, both applications having been made at the time first herein stated, and that his is accordingly entitled to a patent, as such original and first inventor on each of the said applications."

MORSELL, Circuit Judge (after stating the facts as above). The appellant, to show the grounds of his appeal from said decision, filed his reasons, twenty in number. Upon examination they appear to be very full, and sufficiently special to show and cover all objections, that said decision may be susceptible of. It will not be necessary particularly to state them, as they will be duly regarded in the consideration which I shall give the case in forming my opinion, and so with respect to the report of the acting commissioner in reply to the reasons of appeal, it is in substance but little more than a reiteration of the principles contained in the reasons as the grounds of the decision. In this state of the case, according to notice

·duly given of the time and place of the trial of this appeal, the original papers and ·documents with all the evidence were laid before me, and the parties, by their counsel, having appeared, filed their arguments in writing and submitted the case.

The issue between these parties is priority ·of invention, in an interference declared in two applications for patents on the part of ·Johnson, and one on the part of Gibbs, because, ·as stated, their inventions are substantially identical. As before stated, Johnson's claim is for the stitch described in his specification, ·consisting of a chain stitch, having a binding thread passed through its loops for the purpose ·described, and the rotary hook · constructed ·as described or in any manner equivalent thereto, in combination with a needle and a ·bobbin for the purpose of forming a seam by ·the interlacing of two threads as set forth. ·The claims of Gibbs are, 1st, for "the sewing by machinery of cloth or other fabric by interlacing a binding thread with the loops of a ·tambour or chain stitch. 2nd. In combination with an eye pointed needle and suitable feeding mechanism, a discoidal shuttle or thread case provided with two hooks, both taking ·separate and successive loops from the needle when the said parts are arranged in relation to ·each other so as to operate substantially as ·described, whereby either of the three stitches herein set forth may be made by simply chan-·ging the direction of the feed or omitting the insertion of the secondary thread at pleasure.

The office supposes that the thing claimed by the parties is substantially identical, and if the parties were agreed in this there would be much less difficulty in deciding the question of priority between them, but in this it is supposed there is a material difference. The claim of the one is supposed to be for three elements only, the combination of a needle, rotary hook and bobbin producing a new stitch, the double thread lock chain stitch; the other producing a like stitch me-·chanically by a peculiar, specific combination ·of mechanical devices, consisting of four elements, a peculiar mechanical feeding arrangement essentially constituting one of them. That each of the parties had in view an improved change in the sewing machine, so as to produce a better thread, and that they suc-·ceeded in attaining that object after various ·experiments, clearly appears by the results of those now exhibited before the patent office. Johnson dates his discovery in 1853–'54; Gibbs ·at a later period. The question is, who first conceived the thought? This must depend upon the evidence. Owing to several different stitches then in use, and in some respects resembling the one in controversy, the difficulty in applying the evidence is very much in-·creased. It is suggested by one of the counsel in his argument, that the rule is, "that the mechanical production of the stitch at length brought to perfection by each of the parties as now exhibited to the office cannot be estab-lished either by hearsay, opinion or presump-

tion, but only by the testimony of those who saw it so produced by the alleged mechanical agent and proof on mechanical principles of the ability of said machine to produce the stitch in question." This rule is somewhat different from what I think is right. The general rule as applicable to all cases is, that the best evidence which the nature of the case will admit of, must be produced. In questions of priority of invention such as this, where the precise time is to be ascertained, the invention itself being an intellectual operation, and the nature of the case differing very much from ordinary cases, the declarations and conversations of the party himself, where forming a part of the res gestae, are admissible. This point was very fully considered and settled by me in the case of Dietz v. Wade, appeal from the patent office April 12, 1859 [Case No. 3,903], to which I refer, and to the principles as there settled I still adhere.

Preliminary to considering the effect of the testimony on the part of Johnson, it will be proper to notice objections which have been made by the counsel of Gibbs to the reception of: First, that taken at Boston. I do not discover enough in the grounds of the objection to justify my shutting the evidence out of the case. Next, as to the admissibility of the testimony of the witnesses Johnson and his wife. The assignment in this case appears to be bona fide, but Johnson appears at the time of it the sole and real party to the record of the case in the patent office. I am not satisfied that their testimony was admissible, and therefore exclude it from the case. The objection to Stephens' testimony is certainly strong, and if it stood alone, I should feel much difficulty in giving credit to it, but it is corroborated, and must therefore receive such weight as, under such circumstances, may be thought due to it. So also as to the testimony of Cushman and Miss Bennettick, to prove the admission of Gibbs to Johnson of his (Johnson's) right to the thing claimed. The objection is as to the weight which attaches to it, for the purpose of showing the proper rule to be applied. A number of authorities containing adjudged cases are referred to. It will be seen that the decisions in all those cases depend upon the circumstances of each case, and as exceptions to the general rule, which not only makes the admissions or confessions of the party, fairly and seriously made, and relevant, admissible, but of the strongest kind. If the admissions are by way of compromise and without the admission of any particular independent facts, this would be considered as inadmissible, but if the offer be so made voluntarily without any pending negotiation, and without stating it to be made without prejudice the rule does not apply. This latter appears to me to be the predicament under which the admissions were made in this case. The objection is of course overruled.

What then does the legal evidence show the case to be upon the merits? Stephens

says in the year 1854, he thinks in June, Johnson told him he had invented a stitch by interweaving a binding thread with a chain stitch which would take the place of a shuttle stitch, and he intended sometime to get out a patent for a hook which would do the work. He showed him such a hook, about that time; it was an S-shaped hook, with a hole or opening in the center for a bobbin. He also showed him the bobbin. He thinks the bobbin was also made of brass. The Exhibits Ab and Bc shown to him represent the hook and the bobbin quite correctly. Ab is a view of the flat side of the hook. Bc is a sectional view with the bobbin inside. Mr. Johnson said this was to carry the bobbin thread through the loops of a chain stitch. In October, 1856, Johnson showed him Exhibit O as his invention; he said the machine with this device was to make a double thread fast stitch; that the machine was a shuttle machine; that he saw him sew a few stitches with it; that he thought it was a chain stitch with a shuttle thread run through the loops; did not do the work well, but Johnson said he intended to perfect it so that it would do the work; thinks the stitch which this machine made was like the one explained to him by Johnson in 1854; thinks he saw the sewing done in October; that he made some alterations in the machine; it was sent away as a shuttle machine; some of these alterations were made, he thinks in the latter part of November or early in December, 1856; that the last alterations which he made were in February or March, 1857; that while he was making these alterations Johnson told him that he had got a rotary hook machine, or was making a rotary hook machine that would do the same work and make a double thread fast stitch; he saw the hook of this machine; after he first saw this hook, Mr. Johnson kept changing and altering it; he saw this hook applied to a machine; the end of the hook shaft was put into the end of the goose neck of a bag machine; he saw quite a number of bobbins made for it; he thinks some had cases, but he is not positive; he saw some of the bobbins put into the hooks in the experimenting room; he was told that this was to make a chain stitch with an interlaced shuttle thread; he thinks this was in the early part of December, 1856; saw the machine sew a few stitches; did not make it run rapidly; saw the machine in 1857, a perfect operating machine.

If the facts as stated by this witness be true, then the machine Ab, Bc, was constructed in the years 1853–54, and the object and intention as declared by Johnson was to invent a machine which would produce a stitch as claimed by him, that is, a chain stitch having a binding thread passed through the loops, and that these declarations were made at the time that the machine was shown to him by Johnson, explaining to him the nature of the same. These declarations and conversations under such circumstances formed a part of the res gestae, as before stated, and must be received as legal evidence, for the purpose of ascertaining who was the first and original inventor, in an issue like the present of priority. The doubt of the object and intention of this instrument, in its imperfect state at that time, and at other times by said declarations connected therewith, became obviated. The testimony of this witness is corroborated by Samuel W. Hall, and other witnesses in the substance of the facts as stated above. This witness testifies also to a series of experiments by Johnson for the purpose of perfecting his invention, until finally he accomplished it and made an application for a patent. This will also appear from the testimony of a number of witnesses on behalf of Johnson. Furthermore the admissions of Gibbs to Johnson in the year 1857, middle of May, amounts to a full confirmation of the right of Johnson as the first and original inventor, as claimed by him and proved by the evidence given on his behalf, and the commissioner's decision as to the claim of the said Johnson as made by him is hereby ratified and confirmed.

The above decision is not intended to embrace the claim of the appellant so far as relates to the mechanical device; that is, the mechanical feeding arrangement. The commissioner supposed that Gibbs' machine, with but slight modifications, produced the same result by the same combination of mechanism organized under an equivalent arrangement to that of Johnson, and this combination is distinctly covered by Gibbs' claim if he means a mere equivalent. I think in this there is error, because I consider it more than an equivalent. The one is a feeder by hand; the other automatically or a self feeder. The one a mechanical feeder of a peculiar construction; the other not. The one is a new and superior mode of arriving at the same object, and a labor saving instrument. It accomplishes some other advantages beyond that of Johnson's, and ought therefore to be considered an improvement of that of Johnson's, and as to this branch of the commissioner's decision I am of opinion, and so decide, that the same be and is hereby reversed, and that the said appellant may, if he thinks proper, reform his claim, so as to be limited according to the aforegoing principles.

GIBBS (MATERN v.). See Case No. 9,273.

GIBBS (STODDARD v.). See Case No. 13,-468.